# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:08-cv-138-RJC-DSC

| | |
|---|---|
| JAMEY LAMONT WILKINS, ) | |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| OFFICER GADDY, ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court upon Plaintiff Jamey Lamont Wilkins's ("Plaintiff") Motion for Attorney's Fees, (Doc. No. 91), Defendant Alexander Gaddy's ("Defendant") Response in Opposition, (Doc. No. 99), the Magistrate Judge's Memorandum and Recommendation ("M&R"), recommending that this Court grant Plaintiff's Motion but limit his attorney's fees to $1.50, (Doc. No. 101), Plaintiff's Objections to the M&R, (Doc. No. 102), and Defendant's Reply, (Doc. No. 103). This matter is now ripe for adjudication.

## I. BACKGROUND

Plaintiff, a North Carolina prisoner, filed the instant civil rights suit on March 27, 2008. The action named Defendant Gaddy, a former correctional officer, as Defendant, alleging that he assaulted Plaintiff in violation of the Eighth Amendment. The district court dismissed Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Plaintiff appealed, and the Fourth Circuit affirmed the dismissal. Plaintiff petitioned the Supreme Court for certiorari. In a per curiam decision, the Supreme Court reversed the Fourth Circuit, holding that Plaintiff was entitled to bring a claim for excessive force in violation of the Eighth Amendment even if his injury was only de minimus. On remand, a jury returned a verdict in favor of Plaintiff,

awarding him ninety-nine cents in nominal damages. This Court adjusted the award and entered a judgment for Plaintiff in the amount of one dollar. The jury verdict and judgment were docketed on July 26, 2012. On August 9, 2012, Plaintiff filed a Motion for Attorneys' Fees, seeking $92,306.25.

## II. STANDARD OF REVIEW

The district court may assign dispositive pretrial matters pending before the court to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note).

## III. DISCUSSION

This Court has reviewed those portions of the M&R to which the parties have not objected, and finds no clear error. As the Magistrate Judge correctly explained, the Civil Rights Attorneys' Fee Awards Act of 1976 provides that "[i]n any action or proceeding to enforce a

provision of [the act], the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee." 42 U.S.C. § 1988(b). A Plaintiff "who wins nominal damages is a prevailing party under § 1988." Farrar v. Hobby, 506 U.S. 103, 109 (1992). Plaintiff was a prisoner in a North Carolina correctional facility when he initiated this action with respect to prison conditions pursuant to 42 U.S.C. §1983. He has remained in state custody throughout the pendency of this action. Therefore, this action is subject to the restrictions in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(d) (2012).

> The PLRA provides, in relevant part:
>
> (d) Attorney's fees.
>
> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 2 of the Revised Statutes of the United States (42 U.S.C. 1988), such fees shall not be awarded, except to the extent that–
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 2 of the Revised Statutes; and (B)(I) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18, United States Code, for payment of court-appointed counsel.

42 U.S.C. §1997e(d)(1)-(3) (2012).

    A.    <u>Statutory Construction</u>

The Fourth Circuit has not yet determined whether the PLRA sets a cap on attorneys' fees, but the Magistrate Judge found that based on the Fourth Circuit's opinion in Alexander S. v. Boyd, 113 F.3d 1373, 1379 (4th Cir. 1997), and other circuits' precedent as summarized in Shepherd v. Goord, 662 F.3d 603, 606-08 (2d Cir. 2011), 42 U.S.C. § 1997e(d)(2) should be construed as setting a statutory cap on attorneys' fees at 150 percent of Plaintiff's judgment, or $1.50 in this case. See Boivin v. Black, 225 F.3d 36, 40 (1st Cir. 2000) (construing § 1997e(d)(2) to "impose[ ] a ceiling on the defendants' liability for attorneys' fees equal to 150% of the amount of [monetary] judgment"); Parker v. Conway, 581 F.3d 198, 201 (3d Cir. 2009) (construing § 1997e(d)(2) to "limit[ ] a prevailing prisoner-plaintiff's attorney's fee award to 150 percent of the [monetary] judgment"); Volk v. Gonzalez, 262 F.3d 528, 536 (5th Cir. 2001) (holding that fees-on-fees were subject to § 1997e(d)(2)'s "limitation on the judgment debtors' responsibility for fees to 150 percent of the judgment"); Walker v. Bain, 257 F.3d 660, 667 (6th Cir. 2001) ("We believe that § 1997e(d)(2) must be read to limit defendants' liability for attorney fees to 150 percent of the money judgment."); Johnson v. Daley, 339 F.3d 582, 583 (7th Cir. 2003) (en banc ) (rejecting equal protection challenge to § 1997e(d) limitations on fee awards to prisoner-plaintiffs, including provision that "fees attributable to [monetary] relief cannot exceed 150% of the damages"); Keup v. Hopkins, 596 F.3d 899, 905 (8th Cir. 2010) (stating that the Eighth Circuit had "repeatedly construed" § 1997e(d)(2) "to cap awards of attorney fees in prisoner rights cases to 150% of the monetary damages awarded"); Dannenberg v. Valadez, 338 F.3d 1070, 1074-75 (9th Cir. 2003) (construing § 1997e(d)(2) to impose 150-percent fee cap, but only with respect to fees incurred solely to obtain monetary damages); Robbins v. Chronister, 435 F.3d 1238, 1241-44 (10th Cir. 2006) (en banc ) (rejecting argument that "absurdity doctrine" precluded construing § 1997e(d)(2) according to its plain meaning, which "limit[s] recovery of

attorney fees from the defendant to 150% of the damage award"). Plaintiff does not object to the Magistrate Judge's construction of § 1997e(d)(2), and this Court finds no clear error in the same. See (Doc. No. 102 at 4) ("Wilkins concedes that the statute can be *construed* to limit a defendant's liability to 150% of a money judgment in a prisoner § 1983 case.") (emphasis in original).

      B.      <u>Constitutional Challenge</u>

Instead, Plaintiff lodges four objections to the M&R, which can be summarized as a broad objection to the Magistrate Judge's alleged failure to sufficiently address Plaintiff's constitutional argument. Plaintiff contends that the fee cap is unconstitutional as applied to him, and asks this Court to modify the Magistrate Judge's recommendation and award Plaintiff $92,306.25 in attorneys' fees. The Court will review Plaintiff's argument regarding the constitutionality of the PLRA's cap on attorneys' fees de novo. 28 U.S.C. § 636(b)(1).

Plaintiff argues that the PLRA fee cap found in § 1997e(d)(2) is incompatible with the due process clause of the Fifth Amendment, which since <u>Bolling v. Sharpe</u>, 347 U.S. 497 (1954), has been deemed to include an equal-protection principle. <u>See, e.g.</u>, <u>Vance v. Bradley</u>, 440 U.S. 93 (1979). In support of his equal protection argument, Plaintiff notes that § 1997e(d)(2) treats prisoner civil rights litigants differently from all other civil rights litigants: whereas a non-prisoner civil rights litigant who wins only a nominal damage award can receive substantial attorneys' fees under 42 U.S.C. § 1988, <u>see, e.g.</u>, <u>Wilcox v. City of Reno</u>, 42 F.3d 550, 557 (9th Cir. 1994) (affirming award of $66,535 in attorneys' fees to section 1983 plaintiff who had secured a $1.00 damage award), the fee cap deprives a prevailing prisoner civil rights litigant of the possibility of any comparable award. Although the Fourth Circuit has not addressed the constitutionality of § 1997e(d), every other circuit to address challenges to the PLRA fee caps

5

has rejected those challenges. See, e.g., Boivin v. Black, 225 F.3d 36, 46 (1st Cir. 2000); Parker v. Conway, 581 F.3d 198, 203 (3d. Cir. 2009); Walker v. Bain, 257 F.3d 660, 669 (6th Cir. 2001); Johnson v. Daley, 339 F.3d 582, 598 (7th Cir. 2003); Foulk v. Charrier, 262 F.3d 687, 704 (8th Cir. 2001); Madrid v. Gomez, 190 F.3d 990, 996 (9th Cir. 1999); Robbins v. Chronister, 435 F.3d 1238, 1244 (10th Cir. 2006); Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 798 (11th Cir. 2003). For the reasons below, this Court also finds § 1997e(d)(2) constitutional.

Generally speaking, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). The level of scrutiny is heightened, however, "[i]f a fundamental right or a suspect class is involved." Gary v. City of Warner Robins, 311 F.3d 1334, 1337 (11th Cir. 2002). As prisoners are not a suspect class, heightened scrutiny is not warranted on that basis. Jackson, 331 F.3d at 797; see also Johnson, 339 F.3d at 585-86 ("Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens."). Nor is there a fundamental right to have one's adversary, or the public treasury, defray all or part of the cost of litigation. Johnson, 339 F.3d at 586. Although prisoners enjoy a fundamental right of access to the courts, see Lewis v. Casey, 518 U.S. 343 (1996), there is no right of subsidized access. See United States v. Kras, 409 U.S. 434 (1973).

Thus, legislation singling out prisoners is analyzed under the rational-basis standard–as Plaintiff concedes,[1] and as the Supreme Court held in McDonald v. Board of Election

---

[1] Although Plaintiff concedes that rational basis review is appropriate here, see (Doc. No. 102 at 4), Plaintiff contends that § 1997e(d)'s attorneys' fees restrictions violate the fundamental right of access to the courts by discouraging attorneys from taking prisoners' civil rights cases. Without question, "prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). To have standing to seek relief under this right, however, a plaintiff must show actual injury by "demonstrat[ing] that a nonfrivolous legal claim ha[s] been

6

Commissioners, 394 U.S. 802 (1969). Under the rational basis standard, a law will be upheld if it "rationally furthers a legitimate [governmental] interest." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); see also Romer v. Evans, 517 U.S. 620, 632 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.").

Under rational basis review, a classification within a statute is accorded a strong presumption of validity, and the Court must uphold it "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller v. Doe, 509 U.S. 312, 319-20 (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. See Beach Commc'ns, 508 U.S. at 315. Consequently, Plaintiff bears the heavy burden of negating every conceivable basis that might support the statute. See Heller, 509 U.S. at 320; Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973).

Under this highly deferential standard, the Court concludes that § 1997e(d) survives rational basis review. By enacting § 1997e(d), Congress intended to decrease "marginal or trivial lawsuits." Hadix v. Johnson, 230 F.3d 840, 845 (6th Cir. 2000); see also Walker, 257 F.3d at 668-69; Boivin, 225 F.3d at 45; Madrid, 190 F.3d at 996. Before the fee cap, there was

---

frustrated or . . . impeded." Lewis v. Casey, 518 U.S. 343, 353 (1996) (footnote omitted). As Plaintiff was represented by counsel and was successful in his § 1983 action, he does not have standing to seek relief under the right of access to the courts. See Boivin, 225 F.3d at 43 n.5 (noting that a prisoner who was represented by counsel and won his claim did not have standing to seek relief under the right of access to the courts). Thus, Plaintiff has not demonstrated a violation of a fundamental right, and, therefore, heightened scrutiny is not warranted on that basis.

nothing to dissuade attorneys from "adopt[ing] a 'shotgun' approach, filing numerous claims in the hopes that at least a minor violation would likely be found, [thus] assuring the recovery of attorneys fees." Hadix, 230 F.3d at 845. By lowering the fees recoverable for a successful claim, "a rational attorney [is likely to] demand a greater likelihood of success before taking a prisoner's case." Id.

Additionally, by decreasing frivolous claims, "Congress could also . . . be seeking to protect the state and federal treasuries, from which the majority of prisoner civil rights awards are paid." Id. In light of the "shotgun" approach some attorneys utilized before the fee cap, "Congress could have rationally concluded that [such] prisoner civil rights litigation leads to attorney fees which are often disproportionate to the harm or injury. Thus, by reducing the number of marginal, albeit meritorious claims, some government resources would be preserved." Walker, 257 F.3d at 669; see also McGann v. Comm'r of Soc. Sec. Admin., 96 F.3d 28, 31 (2d Cir. 1996); Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997).

Plaintiff does not deny that these interests are legitimate. See (Doc. No. 102). Instead, he contends only that the interests are not rationally related to the distinction drawn between prisoners and all other litigants bringing suits against the state. However, it is certainly conceivable that, because of significant potential gains and low opportunity costs, prisoners generally file a disproportionate number of frivolous suits as compared to the population as a whole. Such speculation is sufficient for a rational-basis examination; there is no need for evidence or empirical data. See Beach Commc'ns, 508 U.S. at 315.

As Plaintiff has failed "to negat[e] every conceivable basis which might support §

1997e(d)," the Court must conclude that § 1997e(d) survives rational basis review.[2] Jackson, 331 F.3d at 798 (quotation omitted); see also Boivin, 225 F.3d at 45-46 ("Because a cap on attorneys' fees, particularly when linked with the requirement that the prisoner contribute part of the award to the payment of the fee, see 42 U.S.C. § 1997e(d)(2), conceivably may discourage prisoners and their counsel from filing frivolous or low-value suits, the Court finds that the fit is close enough to pass constitutional muster.").

The Court shares the concern expressed by the Sixth Circuit in Walker v. Bain, but, like the Sixth Circuit, is constrained to follow the mandate of Congress:

> We are aware that § 1997e(d)(2) will have a strong chilling effect upon counsels' willingness to represent prisoners who have meritorious claims. We are also mindful that the "marginal or trivial" claims that result in a judgment for a prisoner, such as Walker, do in fact arise out of an actual, proven civil rights violation. We admit to being troubled by a federal statute that seeks to reduce the number of meritorious civil rights claims and protect the public fisc at the expense of denying a politically unpopular group their ability to vindicate actual, albeit "technical," civil rights violations. However, we are aware that we are not authorized to act as a "superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental

---

[2] Further, the Court finds Judge Easterbrook's comparison of prisoners and veterans particularly enlightening:
> If a veteran suffers on account of substandard medical care at a VA hospital, the legal remedy is under the Federal Tort Claims Act. This statute forbids punitive damages. 28 U.S.C. § 2674 ¶ 1. It caps attorneys' fees at 25% of any judgment (20% if the case is settled). 28 U.S.C. § 2678. Those legal fees are deducted from the plaintiff's recovery; the United States does not cover any part of a prevailing plaintiff's legal expenses. A prisoner can offer his lawyer at defendant's expense as much as 150% of the recovery (plus a quarter of the recovery itself, and any additional amount provided by contract), while a veteran can offer counsel no more than 25% of a recovery that never includes punitive damages.

Johnson v. Daley, 339 F.3d 582, 588 (7th Cir. 2003). "It is difficult to ascribe the caps in the PLRA to irrational antipathy, when prisoners fare better under the PLRA than do veterans and other free persons who must bear their own legal expenses under the American Rule and the FTCA." Id. at 589. Indeed, caps on attorneys' fees, on attorneys' fees, far from being unique to prisoners, are common in litigation against governments and their employees. Id.

9

rights nor proceed along suspect lines." Heller v. Doe, 509 U.S. 312, 319 (1993) (quotation omitted). Moreover, our role is not "to judge the wisdom, fairness, or logic of legislative choices." Id. (quotation omitted). Accordingly, we must conclude that § 1997e(d)(2) survives rational review.

Walker, 257 F.3d at 667-70; see also Boivin, 225 F.3d at 45-46 ("We do not suggest that there is a seamless fit between section 1997e(d)(2) and the goals that Congress aspired to achieve. However, rational basis review does not require a perfect accommodation between means and ends."); Shepherd, 662 F.3d at 609 ("Whatever arguments can be mounted for or against the policy choice reflected in § 1997e(d), particularly as applied to pro bono counsel, the proper forum for that debate is Congress, not the courts."); Robbins, 435 F.3d at 1244 (acknowledging courts' inclination to reward pro bono counsel for their service but concluding that such inclination must yield to a duty to respect an Act of Congress).

      C.     Applying a Portion of the Judgment Toward the Fee

The Magistrate Judge also recommended the following, to which neither party objected:

> Section 1997e(d)(2) further requires the Court to apply a portion of the monetary judgment toward the fees awarded. While the percentage allocated cannot exceed twenty-five percent, an allocation of ten percent from the one dollar judgment, or ten cents, is imposed here. Therefore, the total amount of attorneys' fees owed to Plaintiff by Defendant is $1.40. When the judgment is paid, Plaintiff's attorneys will have to obtain the additional ten cents directly from Plaintiff.

(Doc. No. 101 at 5). The Court finds no clear error in the Magistrate Judge's recommendation. Indeed, it is consistent with a plain reading of the statute as well as relevant case law. See, e.g., Parker, 581 F.3d at 205 ("The PLRA's 25-percent provision does not require a district court to apply 25 percent of the judgment to satisfy an attorney's fee award when the attorney's fee award exceeds 25 percent of the judgment. Accordingly, a district court may apply less than 25 percent

rights nor proceed along suspect lines." Heller v. Doe, 509 U.S. 312, 319 (1993) (quotation omitted). Moreover, our role is not "to judge the wisdom, fairness, or logic of legislative choices." Id. (quotation omitted). Accordingly, we must conclude that § 1997e(d)(2) survives rational review.

Walker, 257 F.3d at 667-70; see also Boivin, 225 F.3d at 45-46 ("We do not suggest that there is a seamless fit between section 1997e(d)(2) and the goals that Congress aspired to achieve. However, rational basis review does not require a perfect accommodation between means and ends."); Shepherd, 662 F.3d at 609 ("Whatever arguments can be mounted for or against the policy choice reflected in § 1997e(d), particularly as applied to pro bono counsel, the proper forum for that debate is Congress, not the courts."); Robbins, 435 F.3d at 1244 (acknowledging courts' inclination to reward pro bono counsel for their service but concluding that such inclination must yield to a duty to respect an Act of Congress).

      C.     Applying a Portion of the Judgment Toward the Fee

The Magistrate Judge also recommended the following, to which neither party objected:

> Section 1997e(d)(2) further requires the Court to apply a portion of the monetary judgment toward the fees awarded. While the percentage allocated cannot exceed twenty-five percent, an allocation of ten percent from the one dollar judgment, or ten cents, is imposed here. Therefore, the total amount of attorneys' fees owed to Plaintiff by Defendant is $1.40. When the judgment is paid, Plaintiff's attorneys will have to obtain the additional ten cents directly from Plaintiff.

(Doc. No. 101 at 5). The Court finds no clear error in the Magistrate Judge's recommendation. Indeed, it is consistent with a plain reading of the statute as well as relevant case law. See, e.g., Parker, 581 F.3d at 205 ("The PLRA's 25-percent provision does not require a district court to apply 25 percent of the judgment to satisfy an attorney's fee award when the attorney's fee award exceeds 25 percent of the judgment. Accordingly, a district court may apply less than 25 percent

of the judgment (as long as it applies some portion of the judgment) to satisfy the attorney's fee award.").

## IV. CONCLUSION

For the reasons stated herein, PLRA § 1997e(d)(2) applies to nominal damage awards and, as applied, the statute does not offend the Fifth Amendment because there is a rational relationship between the fee cap and a variety of legitimate governmental purposes.

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 101), is **ADOPTED**; and
2. Plaintiff's Motion for Attorney's Fees, (Doc. No. 91), is **GRANTED**. Defendant is ordered to pay Plaintiff attorneys' fees in the amount of $1.40. 28 U.S.C. § 1997e(d)(2).

Signed: November 20, 2012

Robert J. Conrad, Jr.
Chief United States District Judge